## N. B. STEDDUM v. KIRBY LUMBER COMPANY ET AL.

No. 2731.    Decided May 5, 1920.

(221 S. W., 920.)

**1.—Trespass to Try Title—Action by Tenant in Common.**

Plaintiff in a suit of trespass to try title claiming an undivided interest in land must establish title to a definite interest therein, whether that for which he sues, or a less interest; and in order to recover the exclusive

possession must show, not only his own title to an undivided interest, but that defendant has no title to any interest.   (P. 524).

### 2.—Same—Recovery Against Trespasser.

Only against a trespasser can the tenant in common recover the entire tract.   (Pp. 524, 525).

### 3.—Divorce—Heirs by Another Marriage—Presumption.

Under the presumption that a *status* once established will be presumed to continue, the divorced wife, owner of a community interest in land, being shown to have borne till death the name of her former husband and no one having ever claimed title as her heir by a second marriage, the evidence is held sufficient to present and to require submission of the issue of her death without remarriage or birth of heirs therefrom, and to render erroneous a peremptory instruction for defendant on the ground that plaintiff, heir of her interest only in case of absence of heirs thereto by a possible second marriage, had failed to disprove their existence.   (P. 523, 525).

### 4.—Divorce—Adultery—Forfeiture of Community Interest—Due Process of Law.

Since the adoption of the Constitution of the Republic securing due process of law (identical with section 19 of the Bill of Rights of our present Constitution) it is necessary that a forfeiture of the wife's interest in community property on the ground of her adultery be declared in a direct proceeding for that purpose.   Such forfeiture will not follow as the result of a decree of divorce obtained by the husband on the ground of her adultery.   (Pp. 518, 519, 525).

Error to the Court of Civil Appeals for the Fourth District, in an appeal from San Augustine County.

Steddum sued the Kirby Lumber Co. and the Houston Oil Co. in trespass to try title.   A peremptory instruction to find for defendants was given, with verdict and judgment accordingly. Plaintiff appealed and the judgment was affirmed.   (154 S. W., 273.) The case on writ of error being referred to the Commission of Appeals, Section B., it was by them recommended for reversal, in the opinion published herewith.   In adopting the recommendation, the Supreme Court, however, stated the grounds of its decision in the accompanying opinion of the Chief Justice.

*Foster & Davis, H. B. Short, G. P. Dougherty, W. F. Ramsey,* and *Charles L. Black,* for plaintiff in error.—Under the Spanish Civil Law in force continuously in Mexico from 1821 to 1870, in the case where the wife had legitimate children born of the marriage living at the time of the commission of the act of adultery, the wife forfeited her interest in the community or ganancial property to her children: in such case the husband did not receive the benefit of such forfeiture.   Fuero Real De Espana, Book IV., Title VII., Laws I. & II;   Las Siete Partidas, Seventh Partida, Title XVII., Law XV;   La Novisima Recopilacion, Book XII., Title XXVIII., Law I; La Recopilacion Leyes De Indias, Book VII., Title VIII., Laws IV; Civil Law of Spain-Mexico, by Gustavus Schmidt, pp. 88-89 of Historical Outline.

Where the wife was guilty of adultery and was divorced, her entire interest in the community estate of herself and husband vested immediately in her legitimate children born prior to the' acts of adultery and divorce, and no child or children born to her afterwards by any future marriage could inherit or was capable of inheriting or taking any of said property. Same authorities.

Forfeitures are not favored by law, and a person having a right of forfeiture must institute a forfeiture suit, or take some other direct affirmative action to enforce the forfeiture within a reasonable time after the right of forfeiture accrues, and unless he does so, it will be conclusively presumed that he intended to and did waive the forfeiture. 19 Cyc., 1359; 13 Am. & Eng. Ency. of Law (2 Ed.), 1075 to 1078; Shepard v. Avery, 89 Texas, 309; Hill v. Kerr, 78 Texas, 217; Breckenridge v. O'Neil, 26 Texas, 105; Jones v. Montes, 15 Texas, 353.

The evidence introduced by plaintiff, in the absence of any evidence to the contrary, at least made out a *prima facie* case of sole heirship in behalf of N. B. Steddum, and was enough to warrant the court in submitting the issue to the jury under proper instructions. Leland v. Eckhart, 81 Texas, 226; Stein v. Ments, 94 S. W., 448; Nearing v. McMurrian, 94 Texas, 50; Shown v. McMackin, 42 Am. Rep., 680; Doe v. Griffin, 15 East, 293; Loring v. Steinman, 42 Mass., 204; Wells v. Margraves, 164 S. W., 881; 16 Cyc., 1062; Hammon on Evidence, 150; 1 Elliott on Evidence, sec. 109; Greenleaf on Evidence (Lewis' Ed.), sec. 41; Barson v. Mulligan, 191 N. Y., 306; Page v. Finley, 5 Texas, 391; Erskine v. Davis, 25 Ill., 251; Rowe v. Hasland, 1 Wm. Bl., 404; Doe, dem. Oldham v. Wolley, 15 E. C. L., (8 B. & C.) 22; King v. Fowler, 11 Pick., 302; Ferry v. Sampson, 112 N. Y., 415; Butterick v. Tilton, 29 N. E., 1088; Wilson v. Allen, 33 S. E., 975; · Clarke v. Cassidy, 62 Ga., 408.

Even if there had been other children born to Phoebe Steddum by marriage after her divorce from Samuel Steddum, who survived her, and such children or their heirs could legally take any part of the land as heirs of Phoebe Steddum, this would make· such heirs tenants in common with N. B. Steddum, plaintiff in the court below, and in such case plaintiff could recover all the interest in the land belonging to him and his co-tenants without proving the exact proportion owned by each co-tenant. Sowers v. Peterson, 59 Texas, 216; Leland v. Eckhart, 81 Texas, 230; Murrell v. Wright, 78 Texas, 519; Ney v. Mumme, 66 Texas, 268; Louder v. Schluter, 78 Texas, 103; Hutchison v. Chandler, 104 S. W., 434; Branch v. Deussen, 108 S. W., 164.

*Hightower, Orgain & Butler,* and *Andrews, Ball & Streetman,* for defendant in error.—Appellant, plaintiff below, having sued only for

an undivided one-half interest in the tract of land described in his petition, it was necessary for him, before being entitled to recover anything, to establish title in himself to an undivided one-half interest or to some definite less interest, and there being no evidence that Phoebe Steddum was not again married, and no evidence that she did not leave surviving her children or their descendants other than the children of herself and Samuel Steddum, and the extent of plaintiff's interest being dependent upon whether Phoebe Steddum did or did not leave children or their descendants other than the children of herself and Samuel Steddum, and, if so, how many of such children are now living, or have descendants now living, appellant wholly failed to establish the interest, if any, to which he was entitled, and no judgment for any fixed interest could have been rendered in his favor at the close of his evidence, hence it was proper that a verdict in defendant's favor be directed, as was done. Thompson v. Locke, 66 Texas, 388; Baldwin v. Goldfrank, 88 Texas, 261; Murrell v. Wright, 78 Texas, 523; Davidson v. Wallingford, 88 Texas, 523; Graham v. Henry, 17 Texas, 167; Bosse v. Cadwallader, 86 Texas, 342; Bauman v. Chambers, 91 Texas, 112; H. E. & W. T. Ry. Co. v. DeWalt, 96 Texas, 134; Gorham v. Settegast, 98 S. W., 665; Dunman v. Cloud, 22 S. W., 529; Elliott on Evidence, secs. 2188, 2189; Anson v. Stein, 6 Iowa, 150; Skinner v. Fulton, 39 Ill., 484; Stelso v. Steiger, 24 Atl., 18.

Under the Spanish-Mexican Civil Law, which was in force in Texas prior to 1840, the wife who was guilty of adultery forfeited her interest in the "ganancial" or community property to the husband, and the plaintiff in this case having put in evidence a decree of the District Court of San Augustine County, Texas, of date September 10, 1839, upon the face of which it appeared that Phoebe Steddum had been found guilty of adultery, and that Samuel Steddum was awarded a divorce from her on that ground, her interest in the community property of herself and her husband, Samuel Steddum, was forfeited to Samuel Steddum, and his sale of the certificate passed title to the same in its entirety. Hence, the plaintiff inherited none of said property from Phoebe Steddum, was entitled to no recovery, and judgment was properly rendered in favor of the defendants. Wheat v. Owen, 15 Texas, 242; Carroll v. Carroll, 20 Texas, 742; 1 White's Recopilacion, pages 48-62; Schmidt. "The Civil Law of Spain and Mexico," page 17, article 68; Ballinger on Community Property, section 5, page 30; McKay on Community Property, page 486, section 425; Speer on the Law of Married Women in Texas, section 168.

## OPINION.

MR. PRESIDING JUSTICE MONTGOMERY delivered the opinion of the court.

N. B. Steddum brought this suit against the Kirby Lumber Company in the ordinary form of trespass to try title to recover an undivided one-half interest in certain lands patented to William Nash, as assignee of Samuel Steddum. At the conclusion of the plaintiff's testimony the court upon motion of defendant gave the jury a peremptory charge to find for the defendant.

The Court of Civil Appeals, as appears from its opinion, on re-hearing sustained this action of the trial court upon the ground that the plaintiff failed to show that he was the owner of a definite interest in the land. That while the proof was sufficient to show that the plaintiff owned an individual interest in the land, it failed to show the extent of that interest, and for that reason the plaintiff was not entitled to recover. In the two opinions of the Court of Civil Appeals, 154 S. W., 273, there appears a full statement of this case, and in the original opinion all the testimony offered by the plaintiff is set. out.

The proof showed that the land certificate by virtue of which the land was located, was issued to · Samuel Steddum in 1838; that he was then a married man, his wife being Phoebe Steddum, and that the certificate was community property. Prior to 1839 there were born to Samuel Steddum and his wife, Phoebe Steddum, three sons. In 1839 Samuel Steddum procured a divorce from his wife, Phoebe Steddum, on the ground of adultery. In 1846 Samuel Steddum married again, and by this last wife had one son, N. B. Steddum, who is the plaintiff in this case. The three sons of Samuel and Phoebe Steddum died intestate, never having been married. Samuel Steddum died in 1848, and Phoebe Steddum died in 1851. The record is silent as to whether Phoebe Steddum ever re-married, unless a statement by a witness that "Phoebe Steddum died in the year 1851" is evidence that she never re-married.

For a more detailed statement of the facts reference is made to the two opinions of the Court of Civil Appeals.

The defendant in error, Kirby Lumber Company, in support of the action of the trial court in giving a peremptory charge in its favor, among other things contends that the adultery of the wife had the effect under the law then in force to forfeit her ganancial or community property to the husband.

The civil law which was in force in Texas until the adoption of the common law in 1840, made one of the penalties for adultery committed by a wife the forfeiture of her interest in the ganancial property. Wheat v. Owens, 15 Texas, 246, 65 Am. Dec., 164, Upon this point the parties to this controversy agree. Plaintiff in error, however, contends that in case the guilty spouse had legitimate children, the forfeiture was to the children, while the defendant in error insists that the forfeiture was under all circumstances to the husband. We have concluded that a decision of this question is not necessary to a proper disposition of this case.

All the Spanish laws upon this subject, translations of which are contained in the briefs of the parties, seem to have contemplated that there should be some character of trial or judicial investigation before the penalties could be inflicted.

However this may be, prior to the alleged adultery of the wife in this case, Texas had declared her independence and adopted a Constitution and Bill of Rights modeled after the Constitutions of the States of the American Union. The Constitution of 1836 embraced in it the declaration that no person should "be deprived of life,. liberty, or property but by due course of law," and the further declaration that "no citizen shall be deprived of privileges, outlawed, exiled, or in any manner disfranchised, except by due course of the law of the land." Constitution of the Republic, Bill of Rights, Sections 6 and 7.

If, as contended by defendants in error, under the civil law, the forfeiture of the ganancial property by the wife guilty of adultery was *ipso facto*, and no judicial investigation or declaration of such forfeiture necessary, we think this method of divesting rights was inconsistent with the provisions of the Constitution quoted above, and that no such punishment could be inflicted except after a trial, which amounted to "due course of the law of the land."

In Jones v. Montes, 15 Texas, 351, the right to certain lands granted to Montes was involved. It was contended that the citizenship of Montes, as well as his right to the land, had been forfeited. The ground of the forfeiture was "that Montes had lost his rights of citizenship by going off to Mexico at the time the Mexicans under General Wool returned." In that case the court, among other things, said:

"In this case it is not pretended but that Montes was a citizen at the date of the Declaration of Independence, and all the right he then had to the land in controversy was secured to him; and if he left under circumstances that, in the opinion of this court, would forfeit his citizenship, the facts by which such onerous penalties were incurred would have to be tried by a due course of law under the 7th article of the declaration of Rights of the Constitution of the Republic, which is as follows: 'No citizen shall be deprived of privileges, outlawed, exiled, or in any manner disfranchised except by due course of the law of the land.' And the 6th article, immediately preceding, provides: 'In all criminal prosecutions the accused shall have the right of being heard by himself or counsel, or both; he shall have the right to demand the nature and cause of the accusation; shall be confronted with the witnesses against him, and have compulsory process for obtaining witnesses in his favor; and in all prosecutions by presentment or indictment he shall have the right to a speedy and public trial by an impartial jury; he shall not be compelled to give evidence against himself, or be deprived of life, liberty or property, but by due course of law. And

no freeman shall be holden to answer for any criminal charge but on presentment or indictment by a grand jury.' Here we have distinctly defined what is meant by 'due course of the law of the land.' "

These provisions of the Constitution of the Republic are practically identical with Section 19 of the Bill of Rights of our present Constitution, and practically the same as one of the provisions of the Fourteenth Amendment to the Constitution of the United States. Under this "due process of law" or "law of the land" provision (the two expressions meaning the same thing), the guilt of the wife must have been judicially ascertained in some character of proceeding provided by law for that purpose before the punishment of forfeiture of her property could be inflicted. In order to constitute due process, it is necessary that notice shall be given and an opportunity to be heard, before the punishment of forfeiture of property rights can be inflicted. We also think that the proceeding to be sufficient must have been brought for the purpose of ascertaining the guilt of the wife and obtaining a judgment declaring such forfeiture, and that she must have had notice both of the proceeding and its purpose. The effect of the due process of law provision in the Constitutions of the several States, and of the United States, has been discussed more frequently perhaps than that of any other Constitutional guaranty.

In re Rosser, 101 Federal, 41 C. C. A., 502, it is said:

"The basic principle of English jurisprudence is that no man shall be deprived of life, liberty, or property, without due process of law, without a course of legal proceedings according to those rules and forms which have been established for the protection of private rights. Such a course must be appropriate to the case and just to the party affected. It must give him notice of the charge or claim against him, and an opportunity to be heard respecting the justice of the order or judgment sought. The notice must be such that he may be advised from it of the nature of the claim against him, and of the relief sought from the court if the claim is sustained. And the opportunity to be heard must be such that he may, if he chooses, cross-examine the witnesses produced to sustain the claim, and produce witnesses to refute it, if a question is in issue, and, if a question of law is presented, the opportunity to be heard must be such that his counsel may, if they desire, argue the justice and propriety of the judgment or order proposed. Judicial orders or judgments affecting the lives or property of citizens in the absence of such a notice and opportunity to the party affected are violative of the fundamental principle of our laws, and cannot be sustained."

This text is supported by many authorities cited in the opinion.

In our opinion the judgment in the suit for divorce, while it had for the purpose of that case the effect of establishing adultery, did not affect the property rights of Phoebe Steddum.

This conclusion is not in conflict with Wheat v. Owens, *supra*, because in that case the forfeiture occurred before 'the adoption of the Constitution of 1836.

From the foregoing it follows that upon the death of Phoebe Steddum her children inherited her interest in the land certificate, or land located by virtue thereof. . The proof was that the three children of Phoebe Steddum and Samuel Steddum died intestate, and that none of them ever married. Therefore, the plaintiff, N. B. Steddum, their half brother, inherited from them some interest in the land. If Phoebe Steddum left surviving her no descendants except the three sons by Samuel Steddum, then N. B. Steddum, took by inheritance a half interest in this land.

The Court of Civil Appeals approved the judgment of the trial court upon the ground that the plaintiff, N. B. Steddum failed to show that Phoebe Steddum had not by a subsequent marriage after divorce had children who survived her, and who, if any such existed, inherited an interest in the land.

The first inquiry suggested by this holding is: Is it necessary for a tenant in common, who owns an undivided interest in land, and sues for such interest, in order to recover from a defendant who is not shown to have any title, to prove the exact interest which he owns, or to prove affirmatively that the defendant has no title to any interest?

The Court of Civil Appeals held that the plaintiff could not recover because he failed to show the extent of his interest. It predicates this conclusion upon two cases decided by the Supreme Court—Baldwin v. Goldfrank, 88 Texas, 261, 31 S. W., 1064, and Davidson v. Wallingford, 88 Texas, 619, 32 S. W., 1030.

Since the decision of Croft v. Rains, 10 Texas, 520, it has been held that a tenant in common could recover in trespass to try title the entire premises as against a stranger to the title or trespasser. Watrous Heirs v. McGrew, 16 Texas, 511; Grassmeyer v. Beeson, 18 Texas, 766, 70 Am. Dec., 309; May v. Slade, 24 Texas, 207; Biencourt v. Parker, 27 Texas, 564; Hutchins v. Bacon, 46 Texas, 414; Guilford v. Love, 49 Texas, 718; Stovall v. Carmichael, 52 Texas, 389; Pilcher v. Kirk, 55 Texas, 215.

In Sowers v. Peterson, 59 Texas, 216, the foregoing decisions were cited and approved, and it was there held that the Revised Statutes by requiring that the claimant of an undivided interest should state the extent of his interest, did not establish any different rule. In Sowers v. Peterson the plaintiff sued for an undivided one-half interest in eighty acres of land, and, it appearing that the defendant had no title, he was permitted to recover the entire tract. This last decision has been cited by the Supreme Court with approval many times, the last citation which we have been able to find being in Leland v. Eckert, 81 Texas, 230, 16 S. W., 897.

These cases all proceed upon the theory that a tenant in common is entitled to possession of the entire premises against all persons except the other tenants in common, and that a stranger to the title, or trespasser, cannot defeat a recovery by showing an outstanding title to some interest in the land in one not a party to the suit.

If it appears that the defendant is the owner of an interest in the land this rule has no application, and in such case the plaintiff can recover only to the extent of his interest, and it necessarily follows that the plaintiff must show the extent of such interest. The effect of these decisions is, we think, to hold that the plaintiff, when he has shown a title to an undivided interest, is entitled to a judgment for the entire tract, or at least for the interest sued for, unless the defendant shall show title to some interest in the land, or the right to the possession thereof.

In Pilcher v. Kirk, *supra*, Sidney Pilcher, a woman, sued Kirk and others to recover certain lands patented to John Gaylor, and alleged that she was the sole surviving heir of John Gaylor, the patentee. The defendant plead not guilty. The evidence tended to show that there were then living other heirs of John Gaylor besides the plaintiff. The court charged the jury that if they believed that there were then living other heirs of John Gaylor besides the plaintiff, that they should find against the plaintiff. The court in that case reviewed the authorities upon the question, and among other things said:

"We have seen from the adjudicated cases that if there were others interested with her as co-heirs, that she would be entitled to recover without disclosing in her petition their interest, or limiting her own claim of title to her undivided interest."

It will be noted that in that case there was no evidence as to who were the other heirs of John Gaylor, nor the extent of their several interests, the evidence simply tending to show that there were then living other persons who inherited some interest in the estate of John Gaylor. Therefore, the plaintiff's testimony in Pilcher v. Kirk did not disclose the extent of her interest. If, under this state of facts, the plaintiff who sued for all the land was entitled to recover upon proof of some indefinite undivided interest; we can see no reason why plaintiff, who sues, as in this case, for an undivided one-half interest, should not be permitted to recover as against one who is not shown to have any title, at least the interest sued for. As before stated, where the defendant is a co-owner, the plaintiff must show the extent of his interest to recover anything, but in this case the defendant offered no testimony, and we think defendant should be treated as a stranger to the title, or trespasser.

The case of Baldwin v. Goldfrank, 88 Texas, 249, 31 S. W., 1064, relied on by the Court of Civil Appeals, is not, in our judgment, in conflict with the foregoing conclusion. In that case the plaintiff attempted to recover an undivided interest by proof that the plain-

tiff and defendant claimed title under a common source, and it is evident from the opinion that the defendant owned an undivided interest in the land. As showing, the question decided, we quote from the opinion:

"It would be a manifest injustice to persons in possession of land, owning an undivided interest therein, to admit a plaintiff into joint possession with them as a co-tenant without determining in the judgment the extent of his interest."

This we concede, but on the other hand, it would be a manifest injustice to deny a plaintiff who confessedly owns an interest in the land any recovery against a party wrongfully in possession without title, for the sole reason that he could not produce evidence to demonstrate the exact interest which he owns.

We do not think the identical question here involved was before the court in Davidson v. Wallingford, 88 Texas, 619, 32 S. W., 1030. In that case plaintiff Wallingford showed title to some indefinite undivided interest as an heir of W. W. Wallingford. Defendant pleaded the statute of limitation of five years, and proved a state of facts which vested the title of all the heirs of W. W. Wallingford except the plaintiff, in the defendant, unless such heirs were laboring under some disability such as minority or coverture. There was no proof of such disability, and the court held that the burden upon this issue was upon the plaintiff to show such disability. Therefore, the proof showed in the Wallingford case that the defendant was not a trespasser, but had acquired the interest of some of the heirs by limitation. Under these circumstances it is evident that the plaintiff could not recover without showing the extent of his interest, but we think the decision would have been otherwise had there been no proof of title in the defendant.

We think the broad statement contained in the case of Davidson v. Wallingford, "that when a tenant in common seeks to recover from a defendant the exclusive possession of the land he should prove not only his own title to an undivided interest, but also that the defendant has no title to any interest," was not necessary to the decision, and is out of harmony with the previous decisions of our Supreme Court. The effect of such a rule would be to require the plaintiff, not only to make out his own case, but to anticipate what title or claim the defendant might assert and prove that such title or claim was invalid. Our conclusion is that the plaintiff in this case made a prima facie case entitling him to judgment, and that the giving of the peremptory charge was not authorized. If on another trial defendant shows title to any interest in the land, plaintiff cannot recover unless he shows the extent of his interest.

Under the views above expressed it is not necessary to a reversal of this case that we should determine whether the evidence offered by the plaintiff was sufficient to show that the plaintiff was the

owner of a definite interest in the land. We, however, are of opinion that while the testimony is meagre, that there are in the record such facts as require the submission of this issue to the jury.

There are disclosed by the record some circumstances which tend to show that Mrs. Steddum after her divorce was never married again. One of them is that in testifying about her death one of the witnesses refers to her as "Phoebe Steddum." If she had married again she would probably have taken the name of her husband, and would not have been thereafter known as Phoebe Steddum. We think it fairly to be inferred from the testimony that both Samuel Steddum and Phoebe Steddum lived until their deaths in the counties of San Augustine and Sabine, adjoining counties, in this State. Two witnesses testified to having known them there. One of these witnesses, Mrs. Earl, testified that she came to Texas in 1837 and settled in San Augustine county and there lived in the same neighborhood with Samuel Steddum and his wife, Phoebe Steddum, for about two years, and that Samuel Steddum then moved to Sabine County. This removal to Sabine county was evidently after Samuel Steddum procured a divorce from Phoebe Steddum. With the exception of six years the witness, Mrs. Earl, lived in San Augustine county from 1837 to the time of her testimony was taken, in 1908. She testified as to the death of Phoebe Steddum and of the time of her death as facts of which she had personal knowledge. She refers to her always as Phoebe Steddum. This suit was tried, and the land involved is situated in San Augustine County. No one claiming through Phoebe Steddum, other than the plaintiff, has ever asserted any title or claim to the land. Considering all these circumstances, we think that the inference might reasonably have been drawn by the jury that Phoebe Steddum never remarried after she was divorced by Samuel Steddum. Further testimony can no doubt be had upon this issue upon another trial.

The defendant in error further insists that as the plaintiff at most had only an equitable title to the land, and had failed to assert it for some sixty years, that he was guilty of such laches as barred him from any recovery. We need not undertake to decide whether under any circumstances stale demand can be asserted as a defense in an action of trespass to try title where plaintiff proves a title upon which he may recover in such action. The defense of stale demand in the present state of the record cannot avail the defendant, because it failed to show that it had acquired or was in any manner connected with the legal title. Wright v. Dunn, 73 Texas, 293, 11 S. W., 330.

For the reasons hereinbefore stated, we recommend that the judgment of the trial court and the Court of Civil Appeals be reversed, and the cause remanded for a new trial.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the Supreme Court.

We approve the recommendation of the Commission of Appeals as to the judgment to be rendered in this case, but rest the decision upon the ground on which we granted the writ of error, namely, that there was some evidence adduced showing the plaintiff's ownership of a definite interest in the land, and he was therefore entitled to have the case go to the jury on the issue.

The Court of Civil Appeals, while in our opinion reaching an erroneous conclusion as to the effect of the evidence on this question, correctly held that it is incumbent upon a plaintiff suing in trespass to try title for an undivided interest in land to establish his title to a definite interest, whether it be the whole interest for which he sues or a less interest; and that he is not entitled to recover the exclusive possession of the land unless he establishes not only his own title to an undivided interest, but also that the defendant has no title to any interest. Such is the holding on the first proposition in Baldwin v. Goldfrank, 88 Texas, 249, 31 S. W., 1064, and on the other in Davidson v. Wallingford, 88 Texas, 619, 23 S. W., 1030. Both decisions are clearly correct, and the Court of Civil Appeals properly followed them.

Neither of these decisions in any way contravenes the rule many times announced by the court, that as against a trespasser one tenant in common may recover the possession of the entire tract. and this, though he only claims in his petition and establishes title to an interest less than the whole. The reason for a tenant in common being so entitled is that he owns his particular interest in the whole land; and since he is entitled to the possession against everybody except his co-tenants, he is necessarily entitled to the exclusive possession against a trespasser.

Before the enactment, in 1879, of the requirement of the statute, now Article 7733, that a plaintiff suing in trespass to try title for an undivided interest in land, must state in his petition "the amount" of the interest, it was held that as against a trespasser a tenant in common was entitled to recover the exclusive possession upon establishing title to an undivided interest in the land though the interest was undefined. Pilcher v. Kirk, 55 Texas, 208, is such a decision. But this requirement of the statute having been enacted after the trial in that case, the Judge writing the opinion was careful to point out at its conclusion that because of the change introduced by the statute a different rule in this respect from that applicable to the first trial would govern the second trial, expressly directing attention to the holding to like effect in Stovall v. Carmichael, 52 Texas, 383. In Baldwin v. Goldfrank, Judge Gaines was stating the rule, not as it existed before the enactment of the statute, but under the statue.

It is only as against a trespasser that one tenant in common is entitled to recover the exclusive possession of the entire land.    He is not entitled to evict a defendant in possession by merely showing the ownership of his own particular undivided interest.    Before he can evict him and thus appropriate the exclusive possession, he must show that he is a trespasser and therefore justly subject to eviction.    Davidson v. Wallingford so holds, and correctly states the rule.

Phoebe Steddum was divorced in 1839, and died about 1851.    Under the rule that a status once established as existing will be presumed to have continued, in the absence of proof of the contrary; and the evidence adduced strongly indicating that she bore the name of Phoebe Steddum down to the time of her death, coupled with the fact that after a long lapse of time there has been nothing to show the existence of children of another marriage, a jury would, in our opinion, have been warranted in finding that she died without issue of a second marriage and without having remarried. These facts and circumstances clearly afforded some evidence of the plaintiff's inheritance of her original interest in the land; and he was entitled to have the issue submitted to the jury.

Whatever may have been the rule under the laws in force in the Republic at the time of the divorce decree with respect to a wife's adultery operating as a forfeiture of her interest in the community property, we are unwilling to hold that under the Constitution of the Republic such a forfeiture could have resulted from a mere divorce proceeding, or could have been decreed otherwise than in a direct proceeding for the purpose of declaring the forfeiture, with full opportunity on the part of the wife to be heard.    A wife against whom such a forfeiture was sought, would have been entitled to a trial upon the direct issue.    Such a decree without the opportunity of having such a trial would not have been countenanced by that Constitution.

The judgments of the District Court and Court of Civil Appeals are reversed and the cause remanded to the District Court.

*Reversed    and    remanded.*