In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-12-00531-CV
_____

### IN RE DONALD BEELER SR.

_____

### Original Proceeding
_____

### OPINION

Donald Beeler Sr. petitioned for habeas corpus relief from the trial court's judgment of contempt and from the order of commitment. We ordered Beeler's release on bond pending the resolution of his petition. Donald Jock Hinrichs, executor of the estate of William Cruse Fuqua, filed a response as the real party in interest. After reviewing the petition, the response, and the record submitted by the parties, we conclude Beeler is not entitled to release. We deny habeas relief and remand Beeler to the custody of the sheriff.

### BACKGROUND

This case concerns the enforcement of a 2003 final judgment in a dispute over land. The property is described in the trial court's 2003 judgment. Fuqua sued to recover the land from Donald Beeler and his wife, Beverly Ann Beeler, who claimed the property

1

through adverse possession. *See Beeler v. Fuqua*, No. 09-03-344-CV, 2004 WL 1902535, at *1 (Tex. App.—Beaumont Aug. 26, 2004, pet. denied) (mem. op.). After the trial court determined Fuqua had record title to a 1/6 undivided interest in the property as a matter of law, the jury found the Beelers did not own the land through adverse possession. *Id.* at 1, 4. On June 11, 2003, the trial judge signed a judgment which (1) provided that the Beelers take nothing from Fuqua, (2) ordered the clerk to deliver to Fuqua certain funds in the registry of the court, (3) awarded possession of the land to Fuqua "with the right to remove fences as he sees fit," and (4) permanently enjoined the Beelers from going on the land or interfering with its use and possession by Fuqua. The Beelers appealed the judgment on the jury's verdict. This Court affirmed the trial court's judgment. *Id.* at **1, 5.

On May 16, 2005, the trial court convened a hearing on Fuqua's motion to hold the Beelers in contempt for violating the permanent injunction. After hearing arguments of counsel, the trial court declined to rule on the motion for contempt, but granted Fuqua's motion for release of the funds in the registry of the court. The Beelers appealed the trial court's denial of their motion for rehearing of the trial court's post-mandate order releasing the funds in the registry of the court. *Beeler v. Fuqua*, No. 09-07-358-CV, 2007 WL 2962799, at *1 (Tex. App.—Beaumont Oct. 11, 2007, pet. denied) (mem. op.). This Court held that the order was not appealable and dismissed the appeal. *Id.* at *2. The trial court ordered the Beelers to pay $7,500 in attorney's fees as a result of their unsuccessful

appeal. *Id.* at \*1. The Beelers' appeal of that order was dismissed for want of prosecution. *See Beeler v. Fuqua*, No. 09-08-00361-CV, 2008 WL 5501162, at \*1 (Tex. App.—Beaumont Jan. 15, 2009, no pet.) (mem. op.).

Fuqua filed a post-judgment petition to enforce the judgment, and to hold the Beelers in contempt for violating the permanent injunction. On April 23, 2009, the trial court issued a show cause order. The trial court conducted a hearing on July 8, 2009. On September 8, 2009, the trial court signed a judgment holding the Beelers in constructive contempt and ordering each of them to serve 180 days in jail unless they purged themselves of their contempt by removing their cattle and their family's cattle from the land within seven days. That order also ruled that the Beelers were collaterally estopped from claiming a 5/6 interest in the property and awarded attorneys fees to Fuqua, but denied Fuqua other requested turnover relief. Fuqua and the Beelers appealed, and that appeal was transferred to the El Paso Court of Appeals on a docket equalization order. *See Beeler v. Fuqua*, 351 S.W.3d 428 (Tex. App.—El Paso 2011, pet. denied). The El Paso Court held it lacked appellate jurisdiction over the contempt finding and dismissed that part of the appeal, but affirmed the remainder of the post-judgment order. *Id.* at 433-34. The Supreme Court denied a petition for review, and the mandate issued July 17, 2012.

On August 13, 2012, Fuqua moved for issuance of an order of commitment. The trial court heard the motion on September 26, 2012, at which time counsel for the Beelers

3

stated that illness prevented him from being ready for the hearing. Overruling the request to delay the hearing, the trial court considered evidence. The trial court delayed ruling on the merits, reconvened the hearing on October 5, 2012, and took additional testimony, as an accommodation to the Beelers' counsel. At the conclusion of the hearing, the trial court signed a commitment order for Donald Beeler Sr. on the 2009 contempt order.[1]

ILLNESS OF COUNSEL

Beeler argues he was denied effective assistance of counsel. Presented in this way, Beeler's underlying argument is that the trial court abused its discretion by failing to grant a continuance of the September 26, 2012 hearing due to counsel's illness. One of the Beelers' attorneys in the trial court represents Beeler on appeal. A claim of ineffectiveness at the trial court level may preclude representation in an appellate court because of a conflict of interest. *See, e.g., White v. State*, 190 S.W.3d 226, 230 n.2 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (Trial counsel who conceded her ineffectiveness in the brief on appeal was replaced by new counsel.); *Camacho v. State*, 65 S.W.3d 107, 109-10 (Tex. App.—Amarillo 2000, no pet.) (per curiam order) ("If ineffective assistance of counsel at trial is raised as an issue on appeal by trial counsel who is also functioning as appellate counsel, a potential or actual conflict between the

---

[1] The 2003 judgment also enjoined Beverly Ann Beeler, and the 2009 contempt judgment found Beverly Ann Beeler in contempt, and ordered Donald R. Beeler, Jr. to remove all fences he had erected on the property. Only Donald Beeler Sr. has been confined pursuant to a court order. Because the acts of Donald R. Beeler Jr. and Beverly Ann Beeler are not at issue in this habeas proceeding, this opinion should not be construed as support for an argument that the trial court lacks authority to hold them in contempt.

4

interests of appellant and appellate counsel arises[.]"). Because the argument essentially is a denial-of-continuance issue, however, replacement of counsel is not required in this case.

As Beeler concedes, the trial court's ruling on the request for a continuance is reviewed for abuse of discretion. *See Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *Harrison v. Harrison*, 367 S.W.3d 822, 826 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). In *Villegas* and *Harrison*, the trial court had abused its discretion by denying a request for a continuance of the trial after allowing counsel to withdraw shortly before trial. *Villegas*, 711 S.W.3d at 625-26; *Harrison*, 367 S.W.3d at 834-35. Here, counsel did not withdraw as counsel, and he participated in the hearing.

Beeler cites two cases from other jurisdictions. *See Gaspar v. Kassm*, 493 F.2d 964 (3rd Cir. 1974); *Smith-Weik Mach. Corp. v. Murdock Mach. & Eng'g Co.*, 423 F.2d 842 (5th Cir. 1970). *Gaspar* concerned a continuance based on the absence of a party whose testimony was crucial to his case. *See Gaspar*, 493 F.2d at 969. In *Smith-Weik*, lead counsel was unavailable for the trial; on appeal, the court determined that in hindsight "the denial of the motion for continuance severely prejudiced the defendant; that, on balance, the interests in favor of a fair trial heavily outweighed the interests in favor of an immediate trial." 423 F.2d at 844. More recently, the Fifth Circuit noted that *Smith-Weik* "explores a facet of the abuse of discretion standard rather than articulating a

different standard for cases involving an attorney's illness." *Johnson v. Potter*, 364 Fed. Appx. 159, 162 n.1 (5th Cir. 2010).

Beeler identifies no specific instance in which counsel performed deficiently during the September 26, 2012 hearing because of illness. The trial court noted that "it seems like you are doing pretty good up here[,]" but the court recessed the hearing as an accommodation to counsel. The trial court reconvened the hearing on a later date. Counsel returned, aided by co-counsel, and presented evidence and argument. Beeler has not shown that the trial court abused its discretion in conducting the hearing when and in the manner that it did.

CONTEMPT JUDGMENT

A court has inherent power to punish a party who fails to obey a prior order of the court. *Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex. 1980). The power is an essential element of judicial independence and authority. *Id*. To obtain his release, the relator must show that the trial court's order of commitment is void. *See In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005); *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995).

Beeler contends the 2009 contempt judgment fails to "conform to the facts in evidence[,]" and he suggests that the 2003 judgment does not clearly state in what respect the judgment had been violated. The 2009 contempt judgment holds Beeler in contempt for violating the 2003 permanent injunction that prohibited Beeler from going on the property or interfering with the use and possession of the land. The judgment establishing

6

the permanent injunction is final and enforceable by the trial court. *See Beeler*, 2004 WL 1902535.

Beeler asserts that the injunction is somehow affected because Fuqua's undivided 1/6 interest in the property was adjudicated, and Beeler believes the other 5/6 interest belongs to him. *Id.* at *1. He fails to distinguish Fuqua's undivided interest in the property from the land itself. Fuqua is a record title holder of land with others who were not joined in the litigation. *Id.* Both Fuqua's and Beeler's rights were fully adjudicated. "[A] tenant in common is entitled to possession of the entire premises against all persons except the other tenants in common[.]" *Steddum v. Kirby Lumber Co.*, 221 S.W. 920, 922 (Tex. 1920). "[A] stranger to the title, or trespasser, cannot defeat a recovery by showing an outstanding title to some interest in the land in one not a party to the suit." *Id.* Beeler did not establish record title to any interest in the property from the sovereignty of the soil; instead, he claimed the property through adverse possession. *Beeler*, 2004 WL 1902535, at *4. The jury found against Beeler. He is permanently enjoined in the 2003 final judgment from entering on or using any of the property. *See id.* at *1.

Beeler contends he was deprived of a jury trial, but where the sentence for contempt does not exceed six months, the relator is not entitled to a jury trial. *See Ex parte Werblud*, 536 S.W.2d 542, 547 (Tex. 1976). Beeler also complains that Fuqua's motion for contempt was unsworn. The lack of a verification or sworn affidavit does not deprive the trial court of the power to enforce its judgment through the exercise of

7

contempt power by issuing a show cause order. *Ex parte Winfree*, 263 S.W.2d 154, 156-58 (Tex. 1953); *see also* Tex. R. Civ. P. 692. A show cause order issued in this case and resulted in the trial judge's signing a judgment of contempt.

EVIDENCE SUPPORTING CONTEMPT

Beeler contends the contempt judgment is void because of the lack of any evidence to support the trial court's findings. He argues a criminal contempt judgment must be supported by some evidence of contempt. Where there is no evidence of contempt, the order is void. *See In re Long*, 984 S.W.2d 623, 626 (Tex. 1999).

"A criminal contempt conviction for disobedience of a court order requires proof beyond a reasonable doubt of: (1) a reasonably specific order; (2) a violation of the order; and (3) the willful intent to violate the order." *Chambers*, 898 S.W.2d at 259.[2] But an involuntary inability to comply with the trial court's order is a defense on which the relator bears the burden of proof. *Id.* at 261.

The purpose of the 2012 hearing was to determine whether Beeler had purged himself of contempt, as permitted by the 2009 contempt judgment, or whether the commitment order should issue. The habeas record does not contain the record of the 2009 contempt hearing. Some of the findings issued by the trial court in 2009 include the following:

---

[2] The contempt judgment also contained a provision through which Beeler could purge himself of his contempt and avoid the sentence. However, Beeler did not purge himself of his contempt, and he does not claim a continuing right to purge himself of contempt. He attacks the order as one for criminal contempt. We therefore address the order as one for punishment.

8

- In Cause No. 41569 . . . the Beelers claimed by adverse possession that they owned [the property]. The jury found against the Beelers so a Final Judgment was signed and entered which Final Judgment awarded the Beelers nothing and permanently enjoined [the Beelers] from going on said land or interfering with the use and possession of the land by [Fuqua] who was awarded his 1/6 title to the land and the full use and possession of the land. . . .

- Since June 11, 2003 D. R. Beeler has been on and used some or parts of [the property] and he with Beverly Ann Beeler have grazed their numerous cows . . . on some of the lots[.]

- Donald R. Beeler Jr. has built fences since June 11, 2003 on some of [the property] and in building these fences has cut and damaged timber[.]

- D. R. Beeler and Beverly Ann Beeler have interfered with the use and possession of the land by [Fuqua] and have violated the permanent injunction in the Final Judgment . . . . To reasonably enforce the injunction . . . it is necessary to Incarcerate D. R. Beeler and Beverly Ann Beeler in the Hardin County Jail for 180 days for contempt of court. They are given the opportunity to purge Themselves from contempt of court by removing all cows from [the property] within 7 days after September 8, 2009. This is a reasonable and necessary action to enforce the Court's injunctions.

- Donald R. Beeler Jr. . . . testified under oath that he and his family were owners of 5/6 of [the property] . . . . Donald R. Beeler Jr. testified that he and a friend built fences on some of [the property] to form pens to graze the cows owned by D. R. Beeler, Beverly Ann Beeler, and various members of their family, . . . . He also testified that some, if not all, of the fencing materials were purchased by his father, [D. R.] Beeler. These fences interfere with the use and possession of the land by [Fuqua.].

- [The Beelers] continue to claim and now claim they own 5/6th of [the property.]

9

Beeler did not file a reporter's record of the 2009 contempt hearing with his habeas petition, and he does not address the findings signed on September 25, 2009. He argues the 2009 contempt judgment concerned cattle, not trees and fences. Beeler refers this Court to counsel's arguments in the hearings conducted in 2012 to the effect that none of Fuqua's witnesses could positively state who erected and repaired the fence on Fuqua's property or who owned the cattle that made the trail on Fuqua's property. Beeler suggests that testimony regarding signs of recent activity on the property will not support the contempt judgment.

The purpose of the 2012 hearing was to determine whether an order of commitment should issue. During the 2012 hearing, Beeler admitted that he has seven head of cattle with his son's herd on adjacent property, and that he had rebuilt fence along an open pasture on the property. Beeler initially denied having done so in the last one and one-half years, but he admitted he ran his cattle with his son's cattle. A person who inspected the property in August 2012 found an electric fence that was powered from a source connected to the younger Beeler's house. The witness observed cattle moving on Beeler's property and found evidence of cattle activity in the back pasture on the property. Beeler testified he understood that the 2009 contempt judgment required him to remove his cows from the property. The evidence supports the trial court's finding that Beeler did not purge himself of contempt, and that the commitment order should issue.

## Punishment For Multiple Violations

Beeler argues the order imposed a single punishment for running the Beelers' cattle on the property and for erecting fences and cutting trees. He suggests the entire order is void because he was not given notice that Fuqua would complain about fences and trees. *See generally Ex parte Lee*, 704 S.W.2d 15, 17 (Tex. 1986) ("If one punishment is assessed for more than one act of contempt, and one act is not punishable by contempt, the entire judgment is void."). However, Beeler was given notice of the act of contempt: violating the permanent injunction by using the property he does not own and interfering with Fuqua's use of the property. The question in 2012 was whether he had purged himself of that contempt. The circumstantial evidence submitted supports Fuqua's position that Beeler had not purged himself of contempt. The order is not void.

## Standing

Beeler argues the executor of Fuqua's estate was not properly made a party to the suit. When a party dies after judgment but before the appeals are exhausted, the case may proceed as if all parties were alive. *See* Tex. R. Civ. P. 156; Tex. R. App. P. 7.1(a). The habeas record includes a copy of the oath of the executor, and the executor of Fuqua's estate has participated in the post-judgment proceedings. There is no defect of parties that would deprive the trial court of jurisdiction or make the contempt order void.

Beeler also argues the contempt order is void because another party claims ownership of the property. This issue has been decided adversely to Beeler. *See Beeler*,

11

2004 WL 1902535, at *1. The jury failed to find Beeler had an interest in the property. Beeler cannot defeat recovery by showing Fuqua is a co-tenant. *See Steddum*, 221 S.W. at 922. Beeler established no title or ownership interest in the property; that ruling inures to the benefit of Fuqua's co-tenants. *See Cook v. Spivey*, 174 S.W.2d 634, 636 (Tex. Civ. App.—Amarillo 1943, no writ).

CRUEL AND UNUSUAL PUNISHMENT

Finally, Beeler suggests that this Court may "consider the egregious violations of the Texas Prison Handbook by the Hardin County Jail." Neither the handbook nor proof of its violation is included in the habeas record. The habeas record contains an unsigned and unattributed narrative, evidently by a younger Beeler, but this narrative neither establishes the minimum conditions for confinement nor shows that the conditions of Beeler's confinement implicate the Eighth Amendment. *See generally Harris v. Angelina Cnty., Tex.*, 31 F.3d 331, 334 (5th Cir. 1994) (To maintain an Eighth Amendment claim, a prisoner must show that his confinement resulted in an objectively, sufficiently serious deprivation that denies the minimal civilized measure of life's necessities.). Even if an original habeas proceeding under section 22.221 of the Texas Government Code is an appropriate vehicle for challenging the jail conditions, Beeler has not shown he is entitled to relief on that basis. *See* Tex. Gov't Code Ann. § 22.221(d) (West 2004). After reviewing the petition, the response, and the record submitted by the parties, we deny

12

habeas relief and rescind our order of release on bond. Beeler is remanded to the custody of the sheriff.

PETITION DENIED.

_____
DAVID GAULTNEY
Justice

Submitted on November 19, 2012
Opinion Delivered January 24, 2013

Before McKeithen, C.J., Gaultney and Kreger, JJ.